# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

JAMESY JEAN-MICHEL,

    Plaintiff

    V.

ANTHEM BLUE CROSS LIFE AND
HEALTH INSURANCE COMPANY, DLA
PIPER LLP (US), AND THE DLA PIPER
NON PARTNERS PPO ANTHEM PLAN,

    Defendants

CIVIL ACTION NO.

## COMPLAINT

## INTRODUCTION

1. Plaintiff, Jamesy Jean-Michel brings this action against the Defendants, Anthem Blue
   Cross Life and Health Insurance Company ("Anthem"), DLA Piper LLP (US) ("DLA
   Piper") and the DLA Piper Non Partners PPO Anthem Plan (the "Plan") (collectively
   referred to as "Defendants") for violations of the Employee Retirement Income Security
   Act of 1974, as amended, 29 U.S.C. §§ 1001 et. seq. ("ERISA"). Mr. Jean-Michel is a
   beneficiary of an ERISA welfare benefit plan administered by Anthem and DLA Piper
   and insured by DLA Piper.

2. Mr. Jean-Michel challenges the Defendants': 1) unreasonable and unlawful denial of Mr.
   Jean-Michel's claim for oral surgery to treat aggressive degenerative jaw tissue disease
   despite the substantial medical evidence demonstrating Mr. Jean-Michel's entitlement to
   said benefits; 2) pattern of rejecting and/or ignoring the substantial evidence supporting

Mr. Jean-Michel's entitlement to coverage; 3) pattern of rejecting and/or ignoring the Plan terms authorizing coverage for such treatment; 4) failure to provide Mr. Jean-Michel with a full and fair review of his claim; and 5) failure to provide a reasonable claims procedure that would yield a decision on the merits of Mr. Jean-Michel's claim.

## JURISDICTION

3.  This Court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Defendants' breach of its ERISA obligations took place in this district.

## PARTIES

4.  The plaintiff, Mr. Jean-Michel, presently resides in Mattapan, Massachusetts. At the time the treatment began which is the subject of this Complaint, Mr. Jean-Michel was, and continues to be, a dependent beneficiary of a participant in the Plan, within the meaning of 29 U.S.C. § 1002(2)(7).  Mr. Jean-Michel has standing to bring this action under 29 U.S.C. § 1132(a).

5.  The defendant, Anthem Blue Cross Life and Health Insurance Company, is a for-profit corporation, with its principal place of business at 2155 Oxnard St, Woodland Hills, CA 91367. Anthem is responsible for administering the Plan, including making decisions regarding Plan participants' eligibility for benefits.

6.  The defendant, DLA Piper LLP (US), is a for-profit limited liability partnership, with its principal place of business at 6225 Smith Avenue, Baltimore, MD 21209. DLA Piper is responsible for both insuring the Plan and making determinations as to Plan participants' eligibility for benefits.

7. The defendant, DLA Piper Non Partners PPO Anthem Plan, is an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. §1002(1).

8. At all times relevant to the claims asserted in this Complaint, Anthem and DLA Piper purported to act as ERISA claims fiduciaries with respect to participants of the Plan generally, and specifically with respect to Mr. Jean-Michel, within the meaning of ERISA.

## FACTS

**The relevant Plan terms.**

9. As a dependent of a Plan employee, Mr. Jean-Michel was entitled to health insurance coverage under the Plan.

10. The Plan provides coverage for surgical treatment of Jaw Joint Disorders. Specifically, the Plan states:

> The plan will pay for splint therapy or surgical treatment for disorders or conditions of the joints linking the jawbones and the skull (temporomandibular joints), including the complex of muscles, nerves and other tissues related to those joints.

11. Mr. Jean-Michel's claim falls under the above Plan provision authorizing coverage for treatment of his jaw disease.

12. Under the terms of the Plan, DLA Piper is the Named Fiduciary with discretionary authority to manage the operation and administration of the plan, interpret the terms of the plan, and allocate and delegate to other fiduciaries.

13. As the Named Fiduciary, and in accordance with ERISA, DLA Piper monitors the performance of delegated fiduciaries.

14. At no time during the course of Mr. Jean-Michel's claim and the internal appeals process did DLA Piper exercise its discretionary authority to manage the operation and

administration of plan, or to interpret the terms of the Plan.

15. Instead, Anthem managed the operation and administration of Plan, reviewing Mr. Jean-Michel's claim, interpreting the terms of the Plan, and rendering a determination on Mr. Jean-Michel's claim.

16. Although the Plan provides DLA Piper with discretionary authority to delegate its discretion to various entities, DLA Piper did not specifically delegate its discretion to Anthem to administer the Plan and to interpret its terms, as required by ERISA. See *Rodriguez-Abrue v. Chase Manhattan Bank*, 986 F.2d 580, 584 (1st Cir. 1993); *Gross v. Sun Life Assur. Co. of Canada*, 734 F.3d 1, 13 (1st Cir. 2013); *Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc*., 813 F.3d 420, 428 (1st Cir. 2016).

17. Any discretion to which the Defendants may claim they are entitled under the Plan is negated by their failure to provide Mr. Jean-Michel with explanations as to their adverse actions as proscribed by ERISA and its implementing regulations.

**Mr. Jean-Michel's claim for oral surgery to treat aggressive degenerative jaw tissue disease and Anthem's response.**

18. Mr. Jean-Michel suffers from aggressive jaw tissue disease which requires oral surgery "in order to restore the patient's gnathologic system (jawbones and joints)," as described by Dr. Hamasat Gheddaf Dam, Mr. Jean-Michel's treatment provider.

19. On December 22, 2017, Dr. Gheddaf Dam filed a claim for oral surgery to treat Mr. Jean-Michel's jaw tissue disease.

20. This claim involved surgery and associated treatment to occur two phases: the first involves his upper jaw, the second, his lower jaw.

21. Mr. Jean-Michel has already undergone the surgery and treatment for his upper jaw, at his own cost.

22. The second phase of treatment for his lower jaw has been postponed as a result of Defendants' delay in reviewing Mr. Jean-Michel's claim, but cannot be delayed any longer without causing substantial harm to Mr. Jean-Michel.

23. Without treatment, Dr. Gheddaf Dam has opined that Mr. Jean-Michel's jaw tissue disease "will lead to the loss of the patient's jaw bone and surrounding structures including joints and ligaments, supporting tissue and teeth."

24. The surgery requested through this action is required to treat Mr. Jean-Michel's condition affecting the muscles, nerves, and tissues related to his jawbones and joints, and is therefore a Jaw Joint Disorder as defined under the terms of the Plan.

25. Whether Mr. Jean-Michel's requested treatment is covered under the Jaw Joint Disorder provision is the subject of this lawsuit.

**Anthem's denial of Mr. Jean-Michel's claim.**

26. On May 16, 2018, Anthem denied Mr. Jean-Michel's claim for benefits.

27. This denial occurred almost five months after Dr. Gheddaf Dam submitted Mr. Jean-Michel's claim for pre-approval from Anthem.

28. Anthem's only explanation for the denial of Mr. Jean-Michel's claim was as follows:

Recently, you or your provider asked us to review a request for the service listed in the table – and the request has not been approved. We'd like to explain why. This service is excluded or not covered under your plan benefits.

Per the member's benefit, dental implants and associated services are not covered as a medical benefit. This includes associated services such as bone grafting to prepare the upper or lower jaw to accept implants. This would be considered a dental procedure and is not covered under the medical part of the plan.

29. Anthem's May 16, 2018 denial letter did not cite to the Plan terms upon which it relied to deny Mr. Jean-Michel's claim, as required by ERISA.

30. Anthem's May 16, 2018 denial letter also did not inform Mr. Jean-Michel that he was entitled to a copy of all documents reviewed or relied upon in denying his claim, nor did it inform him if any internal guidelines were consulted in rendering the decision to deny his claim.

31. Anthem also failed to provide Mr. Jean-Michel with any medical information upon which it relied to deny coverage. Instead, Anthem misstated the nature of Mr. Jean-Michel's medical condition and his request for services.

32. Anthem never addressed the reason for its delay in processing Mr. Jean-Michel's request for pre-approval for his oral surgery.

33. Due to the delay in processing Mr. Jean-Michel's claim for pre-authorization, Mr. Jean-Michel contacted the United States Department of Labor ("DOL") for assistance. Unfortunately, the DOL was unable to assist Mr. Jean-Michel as it does not represent individuals denied benefits under employee welfare benefit plans.

34. Upon information and belief, DLA Piper was not involved in the decision to deny Mr. Jean-Michel's claim for oral surgery.

35. On June 12, 2018, counsel for Mr. Jean-Michel requested a copy of Mr. Jean-Michel's claim file, pursuant to ERISA.

36. 29 U.S.C. § 1132(c) requires the disclosure of plan documents and pertinent documents relied upon by a plan administrator in evaluating the claim within 30 days of receiving a written request.

37. Anthem did not respond to Mr. Jean-Michel's June 12, 2018 letter.

38. On July 9, 2018, counsel for Mr. Jean-Michel sent a letter following up on his June 12, 2018 request for a copy of Mr. Jean-Michel's claim file.

39. Anthem did not respond to Mr. Jean-Michel's July 9, 2018 letter.

40. On July 18, 2018, Anthem produced a fifty-page file, with no cover letter, enclosing incomplete copies of the Plan documents for Mr. Jean-Michel's review as well as copies of the claim file requests counsel for Mr. Jean-Michel had sent Anthem. The only Plan document Anthem provided Mr. Jean-Michel was an outline of the benefits to which he was entitled under the terms of the Plan.

41. On July 18, 2018, counsel for Mr. Jean-Michel again wrote Anthem requesting a copy of his claim file.

42. Anthem did not respond to Mr. Jean-Michel's July 18, 2018 letter.

43. On August 10, 2018, counsel for Mr. Jean-Michel again sent Anthem a letter requesting a copy of his claim file.

44. Anthem did not respond to Mr. Jean-Michel's August 10, 2018 letter.

45. On October 11, 2018, counsel for Mr. Jean-Michel again sent Anthem a letter requesting a copy of his claim file.

46. Anthem did not respond to Mr. Jean-Michel's October 11, 2018 letter.

**Mr. Jean-Michel's appeal of Anthem's denial**.

47. On October 19, 2018, given the urgency of Mr. Jean-Michel's claim and the passage of time, counsel for Mr. Jean-Michel filed an appeal of Anthem's decision to deny Mr. Jean-Michel's claim. As Mr. Jean-Michel stated in his appeal letter:

Due to Mr. Jean-Michel's urgent need for treatment of his jaw disease, he cannot wait any longer for Anthem to produce the requested documents and is submitting the present appeal without the opportunity to review the claim file and ensure medical reports and records from all relevant parties are presented for consideration. If, on appeal review, Anthem determines that a particular element of proof of benefit coverage is lacking in these submissions, Anthem is obligated under ERISA's implementing regulations to inform the undersigned of the particular deficiency and allow Mr. Jean-Michel an opportunity to provide

additional information as needed. This will assist in ensuring that Anthem conducts the full and fair review of Mr. Jean-Michel's appeal as required by ERISA.

48. As of the filing of Mr. Jean-Michel's appeal, nearly 130 days had passed since counsel for Mr. Jean-Michel's initial written request for his claim file.

**Anthem's response to Mr. Jean-Michel's appeal.**

49. On October 26, 2018, Anthem acknowledged Mr. Jean-Michel's appeal, requesting a signed HIPAA authorization.

50. On November 8, 2018, Mr. Jean-Michel provided Anthem with a copy of the requested authorization. The same authorization had been provided to Anthem on June 12, July 9, July 18, August 10, October 11, and October 16, 2018.

51. On October 22, 2018, Anthem wrote Mr. Jean-Michel directly, indicating it had a copy of the requested authorization, and had forwarded his counsel a complete copy of his claim file, stating:

> The Member Authorization Form has been received, the entire claim file request was received and processed on 07/12/2018. Documents were forwarded to Rosenfeld & Rafik offices via UPS TRACKING NUMBER: 1Z00419XNY95369818.

52. Contrary to Anthem's October 22, 2018 claim, Anthem's July 2018 letter included incomplete portions of Mr. Jean-Michel's Plan documents but did not include any information from the claim file.

53. On November 28, 2018, counsel for Mr. Jean-Michel called Anthem to inquire as to the status of Anthem's review of Mr. Jean-Michel's appeal. After waiting on hold for 25 minutes, counsel for Mr. Jean-Michel was informed that there was an issue with processing the authorization, but that Mr. Jean-Michel's appeal was being transferred to "appeals" immediately, with a resolution expected in 72 hours.

54. That same day, Anthem wrote Mr. Jean-Michel directly regarding his appeal. In this letter, Anthem indicated it received Mr. Jean-Michel's appeal on November 28, 2018, despite the fact the appeal had been confirmed received on October 19, 2018.

55. Anthem's November 28, 2018 letter promised "written notification of resolution no later than 30 calendar days from the date the plan received your grievance/appeal."

56. The Plan terms require a decision to be rendered on an appeal within thirty days of receipt of the appeal, stating:

**Notification of the Outcome of the Appeal**

**If you appeal a claim involving urgent/concurrent care**, the *claims administrator* will notify you of the outcome of the appeal as soon as possible, but not later than 72 hours after receipt of your request for appeal.

**If you appeal any other pre-service claim**, the *claims administrator* will notify you of the outcome of the appeal within 30 days after receipt of your request for appeal.

**If you appeal a post-service claim**, the *claims administrator* will notify you of the outcome of the appeal within 60 days after receipt of your request for appeal.

57. By November 28, 2018, forty days had passed since Anthem received Mr. Jean-Michel's appeal.

58. Mr. Jean-Michel later received another letter from Anthem dated November 28, 2018, again acknowledging receipt of his appeal, and promising a resolution within the timeframes outlined in Mr. Jean-Michel's Plan.

59. On November 29, 2018, counsel for Mr. Jean-Michel called Anthem again, this time speaking to "Cassandra." Cassandra was unable to offer counsel for Mr. Jean-Michel any substantive information regarding the status of Anthem's review of Mr. Jean-Michel's appeal. However, Cassandra confirmed Anthem had received a copy of Mr. Jean-Michel's appeal on October 19, 2018.

60. On December 7, 2018, counsel for Mr. Jean-Michel called Anthem again to follow up on the status of Anthem's review of Mr. Jean-Michel's appeal. Counsel was informed a decision was pending and was given a reference number for future calls.

61. On December 14, 2018, counsel for Mr. Jean-Michel called Anthem again, as Mr. Jean-Michel had yet to receive a decision on his appeal. Counsel was placed on hold, only to be transferred to Tina Navarette who indicated Mr. Jean-Michel's appeal was still pending. Counsel asked to speak to the individual handling Mr. Jean-Michel's appeal. After waiting on hold for 25 minutes, counsel was informed that Ms. Navarette could not reach the team member handling Mr. Jean-Michel's claim.

62. Later that same day, counsel for Mr. Jean-Michel received a telephone call from Ms. Navarette, who indicated she received a response from the analyst handling Mr. Jean-Michel's claim. She noted the appeal review would be completed in five to seven days.

63. Seven days later, on December 28, 2018, counsel for Mr. Jean-Michel called Anthem again. This call lasted 45 minutes, with most of the time spent on hold. Counsel spoke to "Daniel," who noted "someone" was "monitoring the claim." Daniel then indicated Anthem was using November 28, 2018 as the date of receipt of Mr. Jean-Michel's claim, indicating a decision would be forthcoming in sixty days. Daniel's justification for using the November 28, 2018 date was the late receipt of Mr. Jean-Michel's HIPAA authorization. However, Mr. Jean-Michel's HIPAA authorization had been provided to Anthem on June 12, July 9, July 18, August 10, October 11, October 16, 2018 and November 8, 2018.

64. That same day, counsel for Mr. Jean-Michel wrote Anthem outlining her attempts to communicate with Anthem regarding the appeal, correcting the date Anthem received his

appeal, and clarifying that Anthem had thirty, not sixty days to review Mr. Jean-Michel's

appeal.

65. Counsel for Mr. Jean-Michel also noted in her December 28, 2018 letter that Mr. Jean-

Michel had yet to receive a copy of his claim file, reiterated his request for the

documents, and noted that 212 days had passed since Anthem received Mr. Jean-Michel's

written request for his file.

66. Anthem did not respond to Mr. Jean-Michel's December 28, 2018 letter.

67. On December 31, 2018, Anthem wrote Mr. Jean-Michel directly, indicating in full:

We received what we identified to be an appeal request.  An appeal request is a formal request to
look at an adverse coverage decision. Upon further review of the request, it was determined that
the request was identified as an appeal in error; therefore, an acknowledgement letter was sent to
you in error. We apologize for any confusion this might have caused you.  We've sent the
request to the appropriate department for handling.

If you have any questions about this letter, please call customer service at the phone number on
the back of your ID card.

68. On February 1, 2019, counsel for Mr. Jean-Michel called Anthem regarding Mr. Jean-

Michel's claim. Counsel was placed on hold for thirty minutes and transferred three

times, with no resolution.

69. In addition to the above communications, on October 17, October 29, and November 15,

2018, counsel for Mr. Jean-Michel contacted Anthem's legal department for assistance in

obtaining Mr. Jean-Michel's claim file and with processing his appeal.

70. Anthem's legal department did not respond to any of counsel for Mr. Jean-Michel's

emails.

71. On February 4, 2019, counsel for Mr. Jean-Michel began communicating with a different

individual in Anthem's appeal department regarding Mr. Jean-Michel's appeal.

72. On February 22, 2019, counsel for Anthem informed Mr. Jean-Michel's counsel that Mr. Jean-Michel's appeal was being handled on a "priority basis."

73. On March 4, 2019, counsel for Mr. Jean-Michel again inquired as to the status of Mr. Jean-Michel's appeal, emailing Anthem's legal department.

74. Subsequently, on March 6, 2019, Anthem's counsel informed counsel for Mr. Jean-Michel he "believe[d]" a decision would be forthcoming the following week.

**Anthem's denial of Mr. Jean-Michel's appeal**.

75. On March 7, 2019, Anthem upheld its decision to deny Mr. Jean-Michel's claim, 139 days after he submitted his appeal, and 109 days after the decision was due under the terms of the Plan.

76. Anthem's March 7, 2019 letter justified its decision on the same basis as its initial denial – that Mr. Jean-Michel was seeking coverage for a dental service. No analysis was made of the fact that Mr. Jean-Michel's claim was subject to the Jaw Joint Disorder provision under the terms of the Plan, which was the basis of his entire appeal.

77. The March 7, 2019 letter also erroneously stated that Mr. Jean-Michel's appeal was received on February 1, 2019.

78. Anthem never provided Mr. Jean-Michel with a copy of his claim file prior to issuing its final denial letter.

**DLA Piper's involvement in Mr. Jean-Michel's claim and the second level appeal**.

79. On March 29, 2019, counsel for Mr. Jean-Michel wrote DLA Piper asking for its assistance with Mr. Jean-Michel's claim. Counsel wrote:

Mr. Jean-Michel is seeking coverage for oral surgery to treat aggressive degenerative jaw tissue disease. We are writing to bring your attention to the Plan benefits administrator - Anthem Blue Cross Life and Health Insurance Company's ("Anthem") - mismanagement of Mr. Jean-Michel's claim throughout the appeal

process, prior to taking next steps to exercise Mr. Jean-Michel's rights under the terms of the Plan. Specifically, while Anthem upheld its denial of Mr. Jean-Michel's claim on March 7, 2019, and it is now his right to file a lawsuit under ERISA in pursuit of his benefits, we are reaching out to you first to highlight Anthem's unreasonable handling of one of your Plan beneficiaries' claims and to hopefully resolve the dispute.

\*\*\*

Due to Anthem's repeated and arbitrary delays, Mr. Jean-Michel has been forced to delay treatment, risking his health. He has also suffered significant financial harm. Eventually, following the medical advice of his surgeon to proceed with the first phase of treatment as soon as possible in order to minimize progression of his disease, Mr. Jean-Michel incurred substantial out-of-pocket costs of $50,000, plus interest charges (invoices enclosed at Exhibit E). This has become an urgent medical claim, as Mr. Jean-Michel's oral surgeon has informed him there is risk of infection and compromising the first phase of treatment if the second phase is not completed by Fall 2019. The second phase of treatment, estimated at an additional $50,000, is cost-prohibitive if not covered under the Plan.

Again, we are bringing this claim to you because, as the self-insurer of the Plan, you have the ability under ERISA to reconsider Mr. Jean-Michel's claim, and to evaluate the process employed by your third-party administrator, Anthem, in evaluating his claim. It is our hope DLA Piper will consider the evidence supporting Mr. Jean-Michel's satisfaction of the Plan term for covered "Jaw Joint Disorders," appreciate his attempts to abide by the terms of the Plan to have his claim heard and approve his medically necessary oral surgery. We acknowledge this is an unusual request, but given the procedural hurdles set forth by Anthem during the appeals process, its dismissal of the substance of Mr. Jean-Michel's claim, and the urgency of his medical situation, we wanted to bring this matter to the firm's attention prior to taking next steps.

80. In late April 2019, DLA Piper received a copy of Mr. Jean-Michel's file from Anthem.

81. On May 3, 2019, counsel for DLA Piper wrote counsel for Mr. Jean-Michel indicating the firm was "treating your April 1 correspondence as a request for a second level of appeal. We will inform Anthem of same, including your specific request that they evaluate whether Mr. Jean-Michel's claim for oral surgery meets the Plan definition of "Jaw Joint Disorder."

82. Counsel for DLA Piper also agreed to forward Mr. Jean-Michel's claim file to counsel that day, almost eleven months after Mr. Jean-Michel's first request for the documents.

83. On May 6, 2019, counsel for Mr. Jean-Michel wrote DLA Piper agreeing to the second level appeal, provided "the firm will monitor the review and ensure Anthem's adherence to the ERISA timeframes," with the appeal review date accruing as of May 6, 2019.

84. That same day, counsel for DLA Piper responded to the May 6, 2019 email stating, "Yes, we can consider the 30 days running as of today." Counsel did not indicate that DLA Piper would oversee Anthem's second level review.

85. On May 9, 2019, counsel for DLA Piper wrote counsel for Mr. Jean-Michel noting: "Anthem indicated to us that, in order to approve the claim, the service must be determined to be "medically necessary" to treat the "jaw joint disorder" as those terms are defined in the Plan. DLA Piper did not indicate it was reviewing Mr. Jean-Michel's claim for the same or overseeing Anthem's review of the documentation.

86. On May 14, 2019, counsel for Mr. Jean-Michel wrote DLA Piper counsel regarding the claim file disclosed on May 6, 2019, noting significant documents were missing from the disclosure, including claim file notes or any documentation regarding the rationale behind the initial claim review or appellate review or any internal guidelines regarding the Jaw Joint Disorder provision.

87. That same day, DLA Piper responded that the firm had "forwarded to you all of the documents that we received from Anthem, but we will follow up with Anthem as to whether there are any additional documents relating to Mr. Jean-Michel's claim. We will also ask Anthem whether they have any other internal materials relating to the definition of "Jaw Joint Disorder.""

88. No further documentation was provided to counsel for Mr. Jean-Michel from DLA Piper or Anthem during the second level appeal, including the missing claim file documentation.

89. On May 20, 2019, counsel for Mr. Jean-Michel asked DLA Piper if additional medical information supporting Mr. Jean-Michel's claim should be sent to the firm or to Anthem directly.

90. DLA Piper responded to counsel's email that same day asking that information be submitted "directly to Anthem for review," and providing a contact to do so.

91. Counsel for DLA Piper further noted that "Anthem does not have any additional policies addressing Jaw Joint Disorder beyond what has already been provided."

92. The only internal guidelines provided to Mr. Jean-Michel by Anthem (via DLA Piper) were medical policies for Temporomandibular Disorder ("TMD") and Orthognathic Surgery, neither of which are relevant to Mr. Jean-Michel's claim.

93. On June 4, 2019, Anthem upheld its decision to deny Mr. Jean-Michel's claim on the basis that Mr. Jean-Michel's surgery is "considered not a covered benefit under the DLA Piper Group Health plan." Anthem explained:

Anthem cannot approve your request for dental services and oral surgery to be covered under the DLA Piper Group Health Plan (Plan). We have reviewed your records, including the most recent records you have submitted. Your records tell us that you have periodontal disease (i.e., problems with the gums and tissues that hold the teeth in place). Your condition does not principally affect the joints connecting the jawbone to the skull (i.e., temporomandibular joint). Treatment of periodontal disease is not a covered benefit under the Plan. The Plan excludes certain services. Treatment to the teeth and gums are excluded under the Plan. For these reasons, the services you have requested are not a covered benefit. We base this decision on your plan's Benefit Booklet under the sections called "MEDICAL CARE THAT IS NOT COVERED" and "Jaw Joint Disorders".

94. Anthem's appeal decision did not engage with any of the medical information submitted by Mr. Jean-Michel or his treatment providers regarding documenting how his request for coverage was subject to the Jaw Joint Disorder provision.

95. Moreover, Anthem indicated that Mr. Jean-Michel suffers from "problems with the gums and tissues that hold the teeth in place." However, gums and tissue do not hold teeth in place. Jaw bones do.

96. Following receipt of this letter, Anthem provided, in response to Mr. Jean-Michel's request, a copy of the claim file from its review of Mr. Jean-Michel's claim.

97. The claim file further revealed that DLA Piper was not involved in the second level review of Mr. Jean-Michel's claim beyond acting as a conduit for information between Anthem, the firm, and Mr. Jean-Michel.

98. All communications between DLA Piper and Anthem were excluded from the claim file disclosed to Mr. Jean-Michel, despite the fact that DLA Piper and Anthem are Plan fiduciaries whose communications during the internal appeals process are subject to the fiduciary exclusion to the attorney-client privilege.

99. On July 22, 2019, counsel for Mr. Jean-Michel requested a copy of all communications between Anthem and DLA Piper from counsel for DLA Piper.

100.    DLA Piper did not respond to Mr. Jean-Michel's request in this regard.

101.    The claim file revealed, and Anthem confirmed in writing, that Anthem did not conduct a medical review of Mr. Jean-Michel's claim prior to May 2019, when DLA Piper became involved in Mr. Jean-Michel's claim.

102.    The first medical review on appeal was requested and performed by Dr. Lawrence

Hoffman on May 9, 2019. Dr. Hoffman's review did not address the "Jaw Joint Disorder"

provision.

103.    A subsequent review of Mr. Jean-Michel's file was conducted by Dr. Hoffman on

May 27, 2019, which did address the Jaw Joint Disorder provision, but failed to address

the medical evidence supporting Mr. Jean-Michel's position his treatment is covered

under this provision.

104.    In dismissing the applicability of the Jaw Joint Disorder provision to Mr. Jean-

Michel's claim, Dr. Hoffman stated:

> Regarding a "jaw joint disorder," no component of the workup via the exhaustive
> documentation submitted on appeal mentions, diagnoses, or suggests the presence
> of a jaw joint disorder as a proximate cause of his diagnosed condition, which,
> again, is aggressive generalized periodontitis. He lost/is losing his teeth because
> of periodontal disease, and there is no clinical etiological relationship between
> end-stage gum disease and any known disorder of the temporomandibular joints.
> (Emphasis added).

105.    Dr. Hoffman indicated the only reason he even addressed the Jaw Joint Disorder

provision was "following concern expressed by a team member and/or medical director

after seeing that coverage was available for non-surgical and surgical TMD treatments in

the member's benefit booklet." (Emphasis added).

106.    Contrary to Dr. Hoffman's assertions, Mr. Jean-Michel's entire appeal, and the

medical evidence (including supportive letters from Mr. Jean-Michel's treatment

providers) provided to Anthem focused on the Jaw Joint Disorder provision.

107.    In fact, the primary reason Mr. Jean-Michel approached DLA Piper was because

Anthem failed to consider the provision during the first appeal. Dr. Hoffman's review

reveals either that the documentation submitted with both Mr. Jean-Michel's appeals was again not reviewed by Anthem or dismissed in its entirety.

108.     Dr. Joseph Karam, a Medical Director at Anthem, made the final decision on Mr. Jean-Michel's second appeal, as, according to Beatriz White, the claims handler, "Blue Cross of California policy requires a medical director sign off on any specialty review. Dr. Karam's review was an administrative review of the specialty reviewer (this is to confirm the appropriate procedure and documents were used in the specialist's review). You have received the complete description of Dr. Karam's involvement in the claim appeal process." Dr. Karam's review states as follows:

Mbr requesting coverage under medical plan for dental procedures related to advanced tooth and gum disease. These are not a covered benefit under the plan. Specialty review and HPDR has confirmed this. Employer SPD reviewed. This is not a covered benefit. The joint is not involved.

Claim denial upheld
Not a covered benefit

109.     The claim file revealed a doctor named Dr. Mendy Maccabee reviewed Mr. Jean-Michel's claim on May 11, 2018.

110.     Dr. Maccabee's review was not disclosed to Mr. Jean-Michel in the claim file forwarded to DLA Piper by Anthem after the beginning of the second level of appeal.

111.     When asked about Dr. Maccabee's review, Anthem indicated her involvement was "not technically a "medical review."

**DLA Piper's involvement in the administrative appeals process.**

112.     Prior to the June 4, 2019 denial letter, issued thirteen months after Mr. Jean-Michel filed his claim, DLA Piper had no role in the review of Mr. Jean-Michel's claim,

the administration of his claim, or the interpretation of the Plan provisions as it applied to Mr. Jean-Michel's claim.

113.     At no point during the internal appeals process did DLA Piper exercise its discretion to evaluate Mr. Jean-Michel's claim or to interpret the terms of the Plan.

**Summary of Defendants' review of Mr. Jean-Michel's claim.**

114.     Mr. Jean-Michel has exhausted his administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

115.     Mr. Jean-Michel's eligibility for benefits is based on the substantial evidence in Defendants' possession.

116.     The Defendants failed to respond to Mr. Jean-Michel's attempts to engage in a meaningful dialogue regarding the evaluation of his claim.

117.     The Defendants failed to meet the minimum requirements for the denial of Mr. Jean-Michel's benefits, in violation of ERISA, 29 U.S.C. 1133, which requires that upon a denial of benefits, the administrative review procedure must include adequate notice in writing setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

118.     The Defendants have also failed to meet the Plan requirements for review of claims that have been denied.

119.     The Defendants failed to provide Mr. Jean-Michel with a full and fair review of his claim for benefits.

120.     The decision to deny Mr. Jean-Michel's benefits was self-serving, wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the Plan and contrary to law.

121.     Due to the unlawful denials of benefits under ERISA, Mr. Jean-Michel has suffered significant financial loss. In addition, his health has been compromised, and continues to be, as a result of Defendants' delay in conducting a full and fair review of his claim.

122.     Having exhausted the administrative procedures provided by the Defendants, Mr. Jean-Michel now brings this action.

**FIRST CAUSE OF ACTION**
**(Enforcement of Terms of Plan**
**Action for Unpaid Benefits)**
**(ALL DEFENDANTS)**

123.     Mr. Jean-Michel realleges each of the paragraphs above as if fully set forth herein.

124.     The Plan is a contract.

125.     Mr. Jean-Michel has performed all of his obligations under the contract.

126.     In particular, Mr. Jean-Michel met all of the conditions for the payment of health insurance benefits under Plan, including but not limited to, providing Defendants proof of the medical necessity of the requested treatment services, pursuant to the terms of his insurance contract. Nonetheless, Defendants have failed to provide Mr. Jean-Michel with the health insurance benefits he is due under the terms of the Plan.

127.     29 U.S.C. § 1132(a)(1)(B) states that:

A civil action may be brought ---

1.      by a participant or beneficiary –

1.    for the relief provided for in subsection (c) of this section, or

2.    to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

128.    The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

129.    The Defendants unlawfully denied Mr. Jean-Michel's benefits in part by failing to provide Mr. Jean-Michel with a full and fair review of its decision to deny coverage for his claim.

130.    In accordance with 29 U.S.C. §1132, Mr. Jean-Michel is entitled to coverage for the first and second phases of his treatment, both received and scheduled to be received under the Plan and as requested by his treatment provider, based upon the medical necessity of this treatment.

131.    The Defendants have refused to provide Mr. Jean-Michel with coverage for the covered medical services received, and are, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

132.    As a direct and proximate result of this breach, Mr. Jean-Michel has lost the principal and the use of the funds expended to pay for the cost of his treatment to date, which should have been paid by Defendants.

**SECOND CAUSE OF ACTION**
**(Penalties against Defendants as the Administrators of the**
**Plan for Failure to Documents)**

133.    Mr. Jean-Michel realleges each of the paragraphs above as if fully set forth herein.

134.    Mr. Jean-Michel, through counsel, made repeated written requests for Mr. Jean-Michel's claim file and plan documents from Defendants DLA Piper and Anthem.

135.    Anthem failed to disclose a complete copy of Mr. Jean-Michel's claim file and Plan documents in response to Mr. Jean-Michel's request.

136.    DLA Piper provided Mr. Jean-Michel with an incomplete copy of Mr. Jean-Michel's claim file, which it received from Anthem. When informed the claim file was incomplete, DLA Piper indicated it would follow up with Anthem for the missing documents. DLA Piper did not provide the missing documents to Mr. Jean-Michel as promised, even though it is responsible for the operation and administration of the Plan.

137.    Following Defendants' final determination on Mr. Jean-Michel's claim, Anthem provided Mr. Jean-Michel with a claim file that included medical reviews conducted at Anthem's request, which Mr. Jean-Michel had never seen before, despite repeated requests, and to which he did not have the opportunity to respond.

138.    Mr. Jean-Michel repeatedly informed Anthem, throughout the entire claims process, that his ability to appeal Defendants' denial of his claim was prejudiced by Defendants' failure to disclose a complete copy of the claim file, and all documents upon which Defendants relied to deny his claim.

139.    Mr. Jean-Michel's ability to exercise his rights under ERISA, and to prove his entitlement to benefits under the terms of the Plan has been prejudiced by Defendants' failure to provide him with a complete copy of his claim file, including all documents required to be disclosed under ERISA.

140.    Defendants should be required to pay the maximum penalty for the withholding of documents pursuant to ERISA.

141.    Mr. Jean-Michel, as a participant and beneficiary of the Plan, has a right to enforce this obligation and seek redress of an administrator's violation.

142.    Under ERISA 29 U.S.C. § 1132(c), "a civil action may be brought (1) by a participant or beneficiary (A) for relief provided for in subsection (c) of this section."

143.    ERISA, 29 U.S.C. § 1132(c) provides for penalties for an administrator's refusal to supply required information, including plan documents. Specifically, 29 U.S.C. § 1132(c) indicates:

(1) *Any* administrator….[who fails to provide certain information]

(A) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $110 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation. (Emphasis added).

144.    DLA Piper is the Plan Administrator of Mr. Jean-Michel's Plan.

145.    On information and belief, Anthem is the claims administrator for the Plan.

146.    Both DLA Piper and Anthem control the administration of the Plan, including the entire claims and appeals process following Mr. Jean-Michel's initial claim for benefits.

147.    Administrators have an obligation to provide information to Plan participants and beneficiaries. This obligation includes a duty to respond to written requests for information about employee benefits and the documents relevant to a claim for benefits.

Plan participants and beneficiaries have a cause of action if administrators fail to provide the requested information.

148.    A penalty is due to be paid by any administrator who fails or refuses to comply with a request for information "which such administrator is required by this subchapter to furnish to a participant or beneficiary."

149.    This penalty applies to the failure to provide the documents relevant to the Plan. 29 U.S.C. § 1024(b)(4).

150.    In addition to the summary plan descriptions and other documents under which the plan is operated, ERISA, 29 U.S.C. § 1029 provides that the Secretary of Labor may also prescribe what other documents should be furnished.

(c) Format and content of summary plan description, annual report, etc., required to be furnished to plan participants and beneficiaries. The Secretary may prescribe the format and content of the summary plan description, the summary of the annual report described in section 1024(b)(3) of this title and *any other report, statements or documents* (other than the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated), *which are required to be furnished or made available to plan participants and beneficiaries receiving benefits under the plan.* (Emphasis added.)

151.    Pursuant to 29 U.S.C. § 1132(c) and 29 U.S.C. § 1029 together, the Secretary is given authority to establish the format and content of what documents are required to be produced "by this subchapter." Therefore, "Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to . . .may in the court's discretion be personally liable" for a 29 U.S.C. § 1132(c) penalty.

152.    Defendants had an obligation to provide all the documents relevant to a claim that are required to be provided by the Department of Labor's ERISA claims regulations.

153.    Defendants as the administrators of the Plan, were in possession of all the Plan and claim documents requested by Mr. Jean-Michel.

154.    Defendants withheld Mr. Jean-Michel's claim file and Plan documents from Mr. Jean-Michel.

155.    Defendants failed to provide these documents to Mr. Jean-Michel, despite his repeated requests to both parties.

156.    Defendants' failure to respond to Mr. Jean-Michel's requests has prejudiced Mr. Jean-Michel's ability to pursue his claim for benefits and to respond to Defendants' adverse benefit determinations.

157.    Defendants' actions in failing to provide Mr. Jean-Michel with a copy of the relevant documents relied upon by Defendants in making their decision to terminate his benefits constitutes a violation of ERISA.

158.    As a result of Defendants' violation of ERISA, Mr. Jean-Michel is entitled to penalties in the amount of $110 a day, beginning thirty days after his first request for a copy of the Plan documents, or July 12, 2018 and ending on the date the documents were finally disclosed to Mr. Jean-Michel, or June 27, 2019.

### THIRD CAUSE OF ACTION
**(Attorneys' Fees and Costs)**
**(ALL DEFENDANTS)**

159.    Mr. Jean-Michel realleges each of the paragraphs above as if fully set forth herein.

160.    Under the standards applicable to ERISA, Mr. Jean-Michel deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

161.    Defendants have the ability to satisfy the award.

162.    Mr. Jean-Michel's conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all such participants. In particular, Plan participants should be granted the benefits, including the procedural benefits surrounding the review of their claims as outlined in the Plan and proscribed by ERISA. Plan participants should not be forced to wait almost one year for their claims to be adjudicated, to involve Plan counsel to obtain documents required to be disclosed under ERISA, and to be deprived of their rights to review and respond to the documents forming the basis of their appeals. The ERISA appeals process was designed to allow a full and fair review of claims. Although the explicit terms of the Plan provide for such protection, Mr. Jean-Michel was deprived of even the most basic procedural rights by Defendants in the review of his claim. Judicial review of the processes employed by Defendants in evaluating Mr. Jean-Michel's claim will benefit all Plan participants.

163.    The Defendants have acted in bad faith in their handling of Mr. Jean-Michel's claim and their denial of his health insurance benefits under the terms of the Plan.

164.    The award of attorneys' fees against the Defendant will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Mr. Jean-Michel, requests this Court to:

(1)    Enter judgment for Mr. Jean-Michel against Defendants;

(2)    Declare, adjudge, and decree that Defendants are obligated to pay Mr. Jean-Michel the cost of the disputed services;

(3)    Order that the Defendants make restitution to Mr. Jean-Michel in the amount of

all losses sustained by Mr. Jean-Michel as a result of the wrongful conduct alleged herein, together with prejudgment interest;

(6)    Award interest, costs, and attorneys' fees to Mr. Jean-Michel; and

(7)    Award such other relief as this Court deems just and proper.

Date: August 7, 2019

Respectfully submitted,

JAMESY JEAN-MICHEL

By his attorneys,

/s/ Mala M. Rafik
Mala M. Rafik
BBO No. 638075
Sarah E. Burns
BBO No. 676074
ROSENFELD & RAFIK
184 High Street, Suite 503
Boston, MA 02110
T: 617-723-7470
F: 617-227-2843
E: mmr@rosenfeld.com